May it please the Court, Michael Francisco on behalf of Appellant Regina Drexler. The First Amendment undoubtedly protects speech that is published about non-threatening issues, even if those issues are embarrassing. Unfortunately, Colorado's laws make such speech subject to punishment and any Coloradan could bring a challenge on a pre-enforcement basis to such laws. Ms. Drexler is such a Coloradan and in addition she has a clearly objective and reasonable basis for fearing additional punishment for engaging in such speech based on the extensive record of what happened to her in Colorado. This case needs to be remanded so that the issues can be decided on the merit for these claims that have been brought and the District Court, with all due respect, has made a couple fundamental errors. The first error, Your Honor, is that the District Court seemed to view this case as a third bite at the apple, noting that the roads had already been driven in state court. However, what's left now is a prospective challenge, meaning what has happened in the past is not being collaterally attacked. There is no more Rooker-Feldman issue. This is a garden variety, if I will, pre-enforcement challenge that's facial based on the First Amendment and the District Court seemed to fail to apply that even handedly through the analysis and related to that, the District Court failed to account for the breadth of the claim here. The claim is not just on behalf of Ms. Drexler and it is not limited to just publications about the relationship with R.B. It is on behalf of all Coloradans. These are claims for facial declaratory relief and it is about a desire to publish about other relationships, not just the relationship at issue. And for that reason, the District Court's analysis simply missed the mark on what is happening here. Second, the District Court really failed to appreciate that. I meant to signpost earlier that it is about claims that reach others, not just claims between Ms. Drexler and the individual R.B. So we think there was error to dismiss it and as this panel contemplated in the discussion, the claims need to be decided on the merits at this time. I welcome this panel's questions. Otherwise, I will continue to argue that under the Eleventh Amendment analysis in particular, the District Court simply failed to follow this Court's many precedents applying the exception to Younger for federal claims against officers, state officials when they are in their official capacity and they have some enforcement connection. And here the Attorney General quite clearly has an enforcement connection. He has an express statutory duty under the protective order statutes. As a peace officer? It is both, yes, Your Honor. As a peace officer, there is an express statutory duty for the Attorney General and we think that that distinguishes this from the instances in which the courts tend to say that the Attorney General can't be named as a representative of the matter or for the general enforcement of state laws. This is a specific statute that gives that authority to peace offers, including the Attorney General. What if it is a new, you know, trainee, he just passes, he or she just passes the academy, it's their first day and, you know, they get the certificate and they say, congratulations, you are now a peace officer of the United States. Let's just say that's me, my background. And so then I get sued in my official capacity as a peace officer who is charged with enforcing the emotional distress stalking statute, the violation of a protective order. Can I be sued simply because I am a peace officer just like the Attorney General? We think you could, Your Honor. That, of course, would be perhaps what the outer limits of a pure peace officer connection would be. But here, as we outlined in the briefs, there are additional connections between the Attorney General and the protection order statutes, such as the conduct that occurred in the Castleman case at the Supreme Court and the fact that he can be specifically appointed to act as a DA, if you will, as a prosecutor. But that did not happen in this case, right? No. And the only two instances in that scenario were when there was a vacancy in the DA's office. Obviously, you can't have two DA's in the same county, right? Yes, Your Honor. But, go ahead. The 11th Amendment immunity exceptions don't require the state prosecutor to have exclusive authority. But they do require, Hendrickson does require, a particular duty to enforce, doesn't it? Yes, we think the statute clearly satisfies the particular duty as to the Attorney General, number one. Number two, I would point out that the DA doesn't even raise 11th Amendment immunity as to the criminal statutes here. I'm not talking about the DA. I'm talking about the Attorney General. So, but the Attorney General, you've identified two instances, two scenarios in which the Attorney General has a duty to enforce. One is, they have the same status as this new recruit, Bob Bacharach, a new peace officer. And the Attorney General has that equivalent duty. I don't know that I would have a particular duty to enforce anything unlike any other peace officer in the state of Colorado. I don't know the Attorney General would, if we're only talking about classification as a peace officer. And then the second scenario is a good argument, but it seems academic, that if there's a vacancy in the DA's office, the Attorney General can be, can have a duty to enforce, not because they're the Attorney General, but because they're the interim DA, and that doesn't happen. So I'm wondering where the particular duty to enforce falls on the Attorney General. Well, I think the particular duty comes from the statute we've identified, 13-14-107. You have to use every reasonable means to enforce it if you're a peace officer. And with respect, I think the particular connection here, just looking at the Attorney General, is certainly greater than the connection the Attorney General had in Kitchen versus Herbert when this course easily adjudicated those claims without the 11th Amendment immunity applying, and it's also greater than what you would find in the Consumer Data Industry Association case, which talks about how it doesn't need to be exclusive. We recognize there are multiple peace officers, and of course you can name multiple defendants, as we have done, as many the Attorney General is the most common-sense defendant to be named in a case like this, for similar reasons, a different statutory scheme, but structurally similar, the Attorney General is the lead defendant, or a defendant certainly, in the 303 Creative, Masterpiece, Cake Shop, Childs line of cases, along with other state actors. How is this case different than Free Speech Coalition, where we said the Attorney General's general law enforcement authority was just absolutely not enough? How is it different? Judge Moritz, I think that the statute we just talked about is specific to protection orders, and that was entirely lacking in Free Speech versus Anderson, and we don't contest the well-recognized rule that an Attorney General can't have a general duty to defend the law for 11th Amendment purposes, but these are two specific... That was the same issue we were dealing with in terms of, is there anything more here than the Attorney General's general duty to defend the law? Correct. I don't see any difference between that case and here. You're relying on the general duty to defend as a peace officer. Well, no. It's not a general peace officer duty. It is a duty specific to the protection order statutes, that peace officers have a duty under 1314107 to enforce these particular laws. Now, there are lots of peace officers, but that statute, and that's entirely lacking in Free Speech versus Anderson. This is the definition of a specific statute. It applies to the universe of protection orders. So pretty much any criminal statute in Colorado, which I assume peace officers can enforce, any criminal statute, that they're not going to be subject to 11th Amendment immunity because they have a general duty to enforce. Or you're calling that a specific duty? I think it's... Every single criminal statute in every peace... Anybody designated as a peace officer of any kind. Somebody, you know, working in the forest or somebody, you know, everybody, they're a peace officer. No, I think in a minute, what we're saying is you would have to have some connection to that particular statute. I'm not familiar with the general freestanding... Well, I don't understand the idea that this is a special relationship then, because a peace officer is an extremely broad category under Colorado law. And I presume peace officers can enforce most of the criminal statutes. Maybe I'm wrong about that. I don't know. I'm not certain about that either. I'm just saying you're advocating for a very broad... No, if peace officers can enforce criminal statutes in a specific way, they'd frankly be no different than DAs. And DAs don't even try to raise 11th Amendment immunity, even though there are many DAs in many criminal statutes. But shouldn't they be different than DAs who have a specific connection? No, I think the specific connection, they're obviously different in practical ways from a DA. But the 11th Amendment is concerned with some connection, not an exclusive connection. And you don't have to name only one person with a connection to the law, which is why we have multiple defendants here. And so I think if you don't think that the attorney general is the most appropriate defendant, you would have to look at the district attorney, certainly, as to the criminal statute where he doesn't even raise 11th Amendment immunity. Your Honor, I'd like to take a step back and consider the nature of the speech restriction that Colorado's laws are imposing here, because we think it's, frankly, quite substantial. What you have are a series of laws that have been used against Ms. Drexler to punish literary speech about a relationship that is non-threatening. That is core First Amendment speech. And what Colorado has done, which is what we think violates the First Amendment, is simply label that speech, non-threatening speech about a relationship that is indirect, not even made directly to a person, as being harassment, and therefore subject to severe restriction. We're talking about a permanent protection order with criminal consequences. It is a rare case in which you have a civil order that has automatic criminal penalty. For speech? Yes. But isn't that directly contradictory to the prior order and judgment that said, you discredit it, not as long as you disagree with the prior panel opinion, and certainly were fallible, but in the decision on collateral review by the state judge, but we have not only a prior panel opinion saying that Ms. Drexler cannot be punished, because the protective order may, even if you credit the impetus for the protective order itself, the prior opinion said that, as I recall, that the protective order itself does not regulate speech. And that was, in fact, not out of a vacuum, but that you had a state judge that was interpreting on collateral review the protective order itself that said exactly the same thing. How do you deal with that? I'm glad you asked, Your Honor. I'll try to be brief. I'd like to reserve a little bit of time for rebuttal. This circuit's prior order and judgment is in a habeas context, in which the question was different than the question here. The question was whether the orders, in this circuit's view, whether it restrained somebody's movement by analogy so much that it created a habeas violation. Here, there is a broader and different standard that applies to pre-enforcement chill of First Amendment activity. So you cannot disregard the court's statements, their explanation of their orders, which in 2015 and in 2018 very clearly indicate that they're restricting Ms. Drexler's ability to publish speech about R.B. Now, a third district court decision in state court about a state collateral attack dismissed that we think it was erroneous by saying that only restricted contact. That's wordplay in the sense that contact was defined to include speech that is a published literary essay that's indirect. And so it was, I don't think, the issue that was before this court before. And in any event, that state court decision's not binding. So if she goes back and asks for dismissal of the protection order, she can't point to that decision that this court did in the county court and say that you have to find that this doesn't restrict speech because it's completely not binding on the county courts. And there's additional reasons in the brief, but we think it's particularly strong that that doesn't defeat the broader category of chill for the First Amendment. So before you surrender the podium, so when the prior panel considered the earlier version of this case and said that the protective order has to be evaluated based on the terms of the order and the terms themselves don't restrict Ms. Drexler's future writings, that's what? Is that dicta or is it just wrong? First of all, it's not the same issue because habeas is talking about her restraints on movement where the order itself, arguably, you could limit it to just the order. But when you're talking about First Amendment chill, this court has been very clear that it's, like in Bantam books, there are, if I could So it's both incorrect and irrelevant? I would say, first of all, it's irrelevant and that's a different legal issue. But we do disagree with that as a matter of interpreting what would happen in state court. But if you really step back, there's 200,000 reasons why Ms. Drexler still has chill. She's been fined $200,000 for engaging in petitioning activity to try to overturn these protection orders that limit her speech. So she's clearly subjectively and for reasonable basis chilled from going back a third time without a federal court declaring the First Amendment rights at issue here. Thank you. Good afternoon, and may it please the court. My name is Joseph Michaels, and with this court's permission, I'll speak for about eight to nine minutes on behalf of the state defendants before I turn it over to my colleagues on the table. We wish you luck with that. Thank you. I appreciate that. We're here today about a protection order that does not even concern, let alone prohibit, the appellant's actions that she wishes to engage in on a personal and on a First Amendment basis. As this court just discussed with my friend on the other side, the protection order does not restrict or even prohibit her ability to write, publish, or perform. My colleagues want to make this about a First Amendment issue, but before they do that, the state officials, the attorney general, the state court administrator, and the state judges, and the county judges for that matter, are immune from suit under the 11th Amendment as arms of the state. So before she can even get there, she has to pierce that sovereign immunity and establish standing. The district court here rightly rejected appellant's claims and dismissed the complaint, and this court should affirm on three different grounds. One, the state defendants all have sovereign immunity. Two, the ex parte young exception to sovereign immunity doesn't apply specifically because none of the state defendants have a particular enforcement authority or a willingness to do so. And third, particularly with the judges, they are not adverse parties under the 11th Amendment and under ex parte young, and more recently, whole women's health versus Jackson, which is cited in the briefs. Now, I do want to very briefly touch on this panel's, this court's last opinion from this case that talks about the protection order, and it talked about how, as Judge Shelby pointed out, you look at the terms of the protection order, and the terms of the protection order are conduct-based. Do not go within a certain number of feet of the protected party's work, the protected party's home, and the protected party's children. Nothing about that is First Amendment-based, and nothing in the protection order, as this court recognized previously, prohibits the appellant from writing or publishing. Under the 11th Amendment, state officials sued in their official capacities are immune from suit as arms of the state, and that applies to judges equally to state officials. A plaintiff, of course, can seek prospective relief against a state official for an ongoing constitutional violation, but to do so, she must establish a particularized enforcement authority of that state official and a demonstrated willingness to do so. And the reason for that is, it harkens back to the standing redressability prong, which is just simply not met if a plaintiff seeks relief against a defendant with no power to enforce a challenge statute. And here, the Attorney General, the State Court Administrator, and the judges don't have any particularized enforcement authority for any of the, for any of the allegations that a state Attorney General is a peace officer, and peace officers are specifically permitted to enforce the criminal, this particular statute. Specifically, why isn't that different than, for instance, in Free State Coalition, which is our more recent case on this issue, where we had a, you know, private cause of action against private entities, porn sites, basically, that were needing to get ID, and if they didn't get ID, you'd have a private cause of action. That's, that's not a criminal statute where you have a specific, essentially, delegation to peace officers to enforce it. Why isn't this different than that? Thank you for the question, Your Honor. In Free Speech Coalition, the Department and the Commission oversaw the program for age verification, but they didn't have a specific enforcement authority. Right. The same is true here with the Attorney General. And it was a private, private cause of action that the statute set up. That's right. Totally different than what we got here. Here, it's a little bit different in terms of structure, but not in terms of the particular enforcement authority. Here, the Attorney General does not have the authority to direct acts of others, or even have a general enforcement authority, nothing more than a general enforcement authority and a statutory obligation to provide opinions to officers and commissioners generally. And to take a step back further, yes, there's a peace officer statute that, that directs enforcement of the laws, but there's an Attorney General statute that has more specific requirements for what the Attorney General can and cannot do. And with respect to the District Attorney's authority, the District Attorneys have the particularized enforcement authority of all the criminal laws. The Attorney General does not have just a roving mandate to go in and enforce criminal, criminal laws to supersede or take the place of the, the District Attorney's authorities. And that's something that this Court actually looked at in the Kitchen v. Herbert case. And it recognized that in that case, the AG did have the authority to supervise and oversee the District Attorney filings. And that's why there was a particularized enforcement authority there. We don't have that here. The District Attorneys have a separate particularized enforcement authority in a separate statutory provision. Well, the Attorney General in Herbert just said as much, right? I mean, it wasn't really an issue that was addressed. The Attorney General just said, I have the authority and didn't contest it. Isn't that right? That's also true. But the statutory framework, Your Honor, was also different based on, at least from what I understand, based on the assertion made that under the statutes at issue there in Utah, I believe, the Attorney General does have that superseding authority or supervisory authority, excuse me. What about, you don't argue that the Attorney General can't find itself in a position of having to enforce this statute in the appropriate circumstance when it's designated by the Governor as a, as a temporary DA. If a case arose involving this statute, the Attorney General would enforce it. True. If the Attorney General was appointed by the Governor to enforce the statute, that would then potentially satisfy the particularized enforcement authority, but that isn't the default. And that only happens in the situation where the Governor would appoint him under the statutory provision. Otherwise, it's just a generalized enforcement authority. And as this Court recognized repeatedly, but most recently in Edmondson, merely because an Attorney General has a duty to prosecute all actions in which the state has an interest is not enough to make him a proper defendant in every such action. And I think also that goes to the point of showing that the particularized enforcement authority is in fact vested in the DAs and it takes an act of a government, a Governor's executive order to tag the Attorney General in order to start a prosecution in those circumstances. I want to talk very quickly about something that was made with a much more strident argument in the reply brief that I think has been addressed in the briefing up to this case. And that's this idea of the Attorney General as counsel for agencies and that giving the Attorney General particularized enforcement authority. And that's certainly just not so. When lawyers for the Attorney General's office represent a state agency as a client, they do so out of a general statutory duty that's specifically found in order for the Attorney General to appear on behalf of the client agency. They're not appearing as an enforcer of the law. They're not appearing on behalf of the Attorney General. They're appearing as any lawyer appears on behalf of a client. They serve as an agent consistent with Colorado or any rules of professional conduct 1.2, where a lawyer must abide by the client's wishes. So applying the ex parte Young exception, as the counsel on the other side advocates for doing, in a situation where the Attorney General is simply counsel for an agency, representing an agency, would amount to essentially nothing more than a generalized finding of the AG having authority to appear. And let me give you an example of sort of why that doesn't track as a matter of logic. The Attorney General, one of the client agencies the Attorney General's office represents is the Office of the State Public Defender. But there's no world where the Attorney General gets up and represents defendants in criminal proceedings because there's no particularized authority to do so. But that doesn't change the fact that the Attorney General does in fact represent the agency in civil actions as a general principle. And that sort of dovetails with this that it was raised in the 303 Creative opinion from this circuit. That doesn't suggest that ex parte Young applies. In that case, much like the Kitchen case, the 10th Circuit described Colorado as having conceded that their Attorney General had enforcement authority, at least limited for that particular statute, the anti-Colorado's anti-discrimination statute. But that was in the context of traceability for standing. And traceability for standing is different than the particular duty to enforce. It's about a little over the time that I want. So unless anybody has any questions specifically for me, I'm going to cede my time. Go ahead and stop the clock. No, I'm good. Okay. All right. Thank you. We ask that you affirm. Thank you. Good afternoon, Jack Peters. I'm here on behalf of District Attorney Walsh. Just to assuage your nerves, my third colleague is not arguing. I didn't mean to scare you all. Sorry. And so I think you've already heard a fair amount about the panel's prior decisions. I'm not going to belabor that. What I would like to focus on that's really relevant to District Attorney Walsh is the declaration that was filed. And I'm happy to talk about the later declaration that was also filed. But I think the key point here is that I'm not sure what else the District Attorney can say, really beyond saying, we will not prosecute you for First Amendment activity. The District Attorney can't say we won't prosecute you for anything because there are lots of crimes that don't involve First Amendment activity. There are lots of ways to violate these two statutes that don't involve First Amendment activity. All the District Attorney can disclaim here is prosecution for protected First Amendment activity. You've got the timing. You know, your closing counsel raises an interesting point that, you know, generally we look at standing at the time that the complaint is filed in a declaration. Both declarations were filed after the filing of the complaint. The second one, quite a bit later. Sure. Is there, is that a problem? Let me focus first on the one filed in the trial court. The issue there is that the District Attorney had no idea who the plaintiff was, no idea what this issue was. The District Attorney does not just walk around filing declarations in every lawsuit anywhere just in case she might, then she might become a party later. That just doesn't make any sense. The District Attorney was named as the defendant and that was the first time the DA's office ever heard about these issues. I mean, there are a lot of people in the city of Denver. The DA does not regularly audit, might I want to prosecute this person, right? That's just not the way the office works. So this is not something that was on the DA's radar at all. Once the DA was named, I think it was about two and a half months between when the DA was named and when that declaration was filed. I think that's relatively quick. Well, I will say that I understand you made that before very, very well today and in your brief. How, however, do we reconcile that common sense argument with our case law and the Supreme Court's case law that says you evaluate standing at the time that the complaint is filed? I think you can reconcile it just fine because the facts are what they are when the complaint was filed. Well, I don't mean to talk over you, but just play devil's advocate. Isn't the problem that to determine whether or not there is an imminent threat of injury for purposes of standing, can a district court or a circuit court look at a declaration that was filed post filing of the complaint to determine at the time of the filing of the complaint whether or not there was an imminent threat? Well, I think the issue there is there's a long line of 10th Circuit cases discussing prosecutors disavowals. Some of those are filed after the fact and that holding would say a prosecutor can never submit a disavowal after filing and that is just not consistent with this circuit's case law. There are several cases in which that happened. Now, if the DA had been named on day one and three years later we thought, hey, that would be a great idea. Let's file that I'll spot you that. That would be a problem, but that's not what happened here. So, I think the issue is, yes, as a general fact, you're looking at the facts as they exist at the time the complaint is filed and that's true for all the allegations, but some things like this kind of disavowal, by their nature, it is not possible to know about them before the complaint is filed. So, it would write out the opportunity to do that entirely. Well, the disavowal may still be relevant, just not for a standing inquiry. I mean, it may present issues on the merits or the ability of a petitioner to satisfy their claim or its summary judgment. So, it's not all is lost. It's just a question of whether it's a special exception to the timing rule. No, I think that's right. I would just go back to saying, I think that would be in, that would conflict with this circuit's case law in which there are disavowals filed after the lawsuit has been filed. So, that would create a, that would create, I mean, I think that would undo prior holdings and that would change this circuit's law, which I don't think would be appropriate here. And I think that it's pretty clear cut that prosecutors in a situation like this, where there is this specific issue of credible fear of prosecution, can disavow prosecution. And that has happened many times and there are many cases where it's discussed. So, I understand the kind of writ large legal issue, but I think as it has actually been handled in this circuit, that's not how it's been handled. It's a matter of fact. It's a matter of historical precedent. I'm happy to answer your questions if you have them, otherwise. Okay, thank you. Thank you. Matt, does the appellant have any rebuttal time? No, you don't. Okay, I tell you what, even though you're out of time, I'll give you 30 seconds. I know it's not a lot of time, but it's 30 seconds more than you had. And that's just, if you have one, say one point or that you can do very briefly. Thank you, Your Honor. I'll go to the last issue of the disavow, because I think it's important. The timing issue we think is critical and is in the briefs. However, the disavow doesn't save the defendant's position because it's too generic. To say that if it's determined to be a First Amendment speech issue, we won't enforce it, is not the type of sense. It's effectively a prior restraint on speech. The whole problem here is that the county court said publishing literary essays is harassment, and regardless of what the First Amendment says, you're going to be punished for it. So it doesn't count as a disavow to say that we will follow the First Amendment. The best case on that is probably the Duran-Patterson Christian Academy one, and I would point to the Holder versus Humanitarian Law. These are both cited in the brief that the disavow has to be for specific conduct, and that's the last thing I will say. The disavow of the DA here is only about R.B., and we have claims that are far broader than R.B. Thank you. This matter will be submitted.